UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>MALKIAT SINGH,<br>Defendant. | Case No. 22-mj-71132-MAG-1 (KAW)<br><br>**ORDER DENYING UNITED STATES' REQUEST FOR DETENTION** |

On August 25, 2022, the United States filed a complaint under 18 U.S.C. § 3184, seeking to arrest Defendant Malkiat Singh[1] for extradition to India. (Compl., Dkt. No. 1.) On October 17, 2022, the United States filed a request for detention pending extradition proceedings. (United States Req. for Detention, Dkt. No. 4.) On November 11, 2022, Defendant filed an opposition to the United States' request for detention. (Def.'s Opp'n, Dkt. No. 8.) On November 18, 2022, the United States filed its reply. (United States Reply, Dkt. No. 10.) On December 1, 2022, the Court held a detention hearing. (Dkt. No. 12.)

Having considered the parties' filings, oral arguments, and the relevant legal authority, the Court DENIES the United States' request for detention pending the extradition hearing, subject to certain conditions of release.

## I. BACKGROUND

On August 28, 1976, Defendant was convicted of murder in violations of Sections 302 and 34 of the Indian Penal Code, and was sentenced to life imprisonment. (Compl. ¶ 4.) Defendant

---

[1] Defendant states that in the United States, he began using his full name -- Malkiat Singh Gohal -- more frequently. (*See* Def.'s Opp'n at 13.)

appealed his conviction to the High Court of Punjab and Haryana; the conviction was affirmed on April 19, 1979. (Compl. at ECF 83.) Defendant then appealed his conviction to the Supreme Court of India, which granted Defendant bail on December 15, 1980. (Compl. at ECF 95-96.) Although the order granting bail did not itself state any travel restrictions, Superintendent of Police Rattan Singh Brar attests that Defendant's bail application was granted "with the conditions that he shall not leave the jurisdiction of the Court without prior permission of the Court." (Compl. at ECF 31-40 ("Brar Aff.") ¶ 6.) Defendant was then released after having spent nearly five years in prison. (Def.'s Opp'n at 5.)

In 1983, Defendant applied for an Indian passport to join his wife in the United States. (Def.'s Opp'n at 5.) Defendant also applied for an immigration visa, in which he answered "No" to the question regarding whether he had "ever been arrested, convicted, or confined in a prison." (United States Reply, Exh. 1 at ECF 16.) An immigrant visa was granted to Defendant, and he entered the United States on April 1, 1984. (*See* United States Reply, Exh. 1 at ECF 14; Jayne Decl., Exh. D at ECF 5, Dkt. No. 8-4.) Defendant has resided in California since. (Def.'s Opp'n at 5.) Defendant also traveled back to India in 1992 and 1994. (Jayne Decl., Exh. D at ECF 6, 8.)

On September 26, 1995, the Supreme Court of India dismissed Defendant's appeal and revoked his bail. (Compl. at ECF 113-14.) Defendant asserts that he was never told that his appeal had been dismissed. (Def.'s Opp'n at 6.) Defendant subsequently traveled to India in August 1996 and January 2011 using his Indian-issued passport. (Jayne Decl., Exh. D at ECF 8, 10.)

On October 22, 2018, Chief Judicial Magistrate Ludhiana issued a warrant of arrest after learning in 2017 that Defendant was residing in California. (Brar Aff. ¶ 6, Compl. at ECF 117.) On January 10, 2019, India presented a formal extradition request. (Compl. at ECF 12.) On August 24, 2022, the Court issued the arrest warrant in this case. (Compl. at ECF 7.) On October 17, 2022, Defendant was arrested in this district. (United States Req. for Detention at 3.)

## II. LEGAL STANDARD

"There is a presumption against bail in an extradition case and only 'special circumstances' will justify bail." *Salerno v. United States*, 878 F.2d 317, 317 (9th Cir. 1989); *see also Wright v.*

2

*Henkel*, 190 U.S. 40, 63 (1903) ("We are unwilling to hold that . . . while bail should not ordinarily be granted in cases of foreign extradition, those courts may not in any case, and whatever the special circumstances, extend that relief."). The presumption against bail stems from the United States' obligations under extradition treaties, with the Supreme Court explaining:

> The demanding government, when it has done all that the treaty and the law require it to do, is entitled to the delivery of the accused on the issue of the proper warrant, and the other government is under obligation to make the surrender; an obligation which it might be impossible to fulfil if release on bail were permitted. The enforcement of the bond, if forfeited, would hardly meet the international demand; and the regaining of the custody of the accused obviously would be surrounded with serious embarrassment.

*Wright*, 190 U.S. at 62.

While "it is unusual and extraordinary for bail to be granted, it is not impossible to obtain bail in an international extradition treaty case." *In re Nacif-Borge*, 829 F. Supp. 1210, 1213 (D. Nev. 1993). The defendant "has the burden of establishing an entitlement to bail," and must not only demonstrate that there are "special circumstances" justifying bail, but that the defendant is not a flight risk or a danger to the community. *Id.* at 1214; *see also United States v. Taitz*, 130 F.R.D. 442, 444 (S.D. Cal. 1990) ("special circumstances must exist in addition to absence of risk of flight"). The party seeking "bail when their extradition is sought must establish the existence of special circumstances by a preponderance of the evidence." *In re Extradition of Blasko*, 17-mc-00067-DAD-SAB, 2018 U.S. Dist. LEXIS 129230, at *13 (E.D. Cal. Aug. 1, 2018); *In re Santos*, 473 F. Supp. 2d 1030, 1035 n.4 (C.D. Cal. 2006). "Special circumstances must be extraordinary and not factors applicable to all defendants facing extradition." *In re Extradition of Maniero*, 950 F. Supp. 290, 294 (S.D. Cal. 1996).

### III.  DISCUSSION

#### A.  Risk of Flight

Having evaluated the specific facts of this case, the Court finds that Defendant is not a flight risk. In so finding, the Court acknowledges that Defendant has been convicted of murder and has exhausted his appeals. Thus, unlike individuals who are facing charges, Defendant will almost certainly be facing imprisonment upon being extradited to India, increasing the risk that

Defendant will flee.[2]

That said, the evidence before the Court does not support a finding that Defendant absconded while on bail. While Superintendent Brar states that bail was issued with the condition that Defendant not leave the jurisdiction of the Supreme Court of India, there is no evidence in the record that Defendant was actually informed of this condition. Indeed, the order granting bail did not include such a condition, and Plaintiff was issued a "Police Clearance Certificate" in 1983 that found there was "no adverse information" that would render Defendant "ineligible for grant of travel facilities including visa for U.S.A." (United States Reply, Exh. 1 at ECF 24.) As such, it is not unreasonable for Defendant to believe that he was permitted to leave the country.

Additionally, Defendant's actions are not consistent with an individual who was knowingly absconding while on bail. While Defendant appears to have made misrepresentations on his visa application (as well as his August 2022 application for naturalization), he went through legal channels to leave India, including applying for a passport. Defendant then returned to India several times, presumably going through immigration, using his Indian passport. The Court does not believe that an individual who knowingly absconded would then return to the country he fled, using a passport that would likely alert the authorities to his entering and leaving the country. He also lived openly in the United States, with no suggestion that he ever tried to conceal his identity or whereabouts.

It is also not apparent to the Court that Defendant was ever informed that his appeal had been dismissed and his bail revoked. Again, Defendant's actions are not consistent with an individual with knowledge of such actions, given that he used his Indian passport to return to India even after the Supreme Court of India's actions. Thus, the Court does not agree with the United States' assertion that Defendant has demonstrated a propensity for flight. (*See* United States Req. for Detention at 14.)

The Court also finds that the risk of flight is substantially reduced by Defendant's advanced age and multiple health issues, as well as the proximity of his family. Moreover, the

---

[2] The Court observes that Defendant is not necessarily facing a life sentence, as the parties represent that his brothers served only a couple years after their appeals were dismissed.

4

1   Court finds that there are conditions of release that can be set which will negate the risk of flight,

2   including surrender of all passports and home confinement.  The Court will also require that

3   Defendant post all of his properties, including his own home where he lives with his wife and

4   those he owns with his daughters.  Courts have recognized that bail itself "will present a

5   significant financial deterrent to flight," and in this particular case, the Court does not believe that

6   Defendant would risk the homes and properties of his family by fleeing.  *In re Extradition of*

7   *Chapman*, 459 F. Supp. 2d 1024, 1027 (D. Haw. 2006).

8       Accordingly, the Court finds that Defendant is not a flight risk.

### B. Danger to the Community

10  The Court finds that Defendant is not a danger to the community.  While Defendant was

11  convicted of murder and has made misrepresentations on his visa application and application for

12  naturalization, he is currently 80 years old, has various serious health issues, and has not been

13  arrested or accused of violent conduct while living in the United States during the past 38 years.

14  (Def.'s Opp'n at 14-15.)  He has also obtained numerous letters of support from the community.

15  (Jayne Decl., Exh. I.)

### C. Special Circumstances

17  Having found that there is no risk of flight or danger to the community, the Court must

18  determine whether there are special circumstances that would justify bail.  The Court finds there

19  is, specifically a lack of diplomatic necessity for detention.

20  In *United States v. Castaneda-Castillo*, the district court found that there was a lack of

21  diplomatic necessity for detention where Peru, the country seeking extradition, "ha[d] obviously

22  not actively pursued this twenty-five year old charge, thereby resulting in a very lengthy delay."

23  739 F. Supp. 2d 49, 57-58 (D. Mass. 2010).  While the district court recognized that the Peruvian

24  government was in turmoil for years, and that the Peruvian president had passed an amnesty law

25  which prevented prosecution for several years, the court found there was no explanation for a

26  three-year delay between the commencement of the case in 2005 and the extradition request in

27  2008.  *Id.* at 58.  The district court also found there was no explanation for the two-year delay

28  between the extradition request and the United States seeking the defendant's provisional arrest,

5

particularly when the United States knew that the defendant was in federal custody while pursuing his amnesty petition. *Id.* at 53, 58. The district court concluded that under those circumstances, the delay weighed "very heavily in favor of release." *Id.* at 58.

Likewise, in *In re Chapman*, the district court found there was a "lack of any diplomatic necessity for denying bail" because the country seeking extradition had "waited three years before bringing extradition proceedings against the Respondents, during which Respondents were living openly and notoriously, aware of the charges against them . . . ." 459 F. Supp. 2d at 1027. Such delay demonstrated that the country seeking extradition "ha[d] not made prosecution of this offense a priority," supporting the defendant's release on bail. *Id.*

In contrast, in *In re Extradition of Drumm*, the district court found that a seven-year delay in filing charges against the defendant was not a special circumstance because "it appears that Ireland ha[d] been actively investigating the case since 2009 and that the delay in charging [the defendant] was attributable, at least in part, to his own decision to relocate to the United States." 150 F. Supp. 3d 92, 98-99 (D. Mass. 2015).

In the instant case, Defendant's appeal was dismissed and his bail revoked in September 1995. Yet it was not until October 2018 -- twenty-three years later -- that an arrest warrant was issued. While the United States points to Indian authorities requesting extradition proceedings being initiated immediately upon learning that Defendant was residing in California in February 2017, there is no showing that Indian authorities took **any** actions between September 1995 and February 2017 -- over twenty-one years -- to seek Defendant. Indeed, during this period, Defendant *twice* traveled to India using his Indian passport, but was not detained. Further, even after discovering that Defendant was residing in California, it took over a year and a half for India to issue an arrest warrant. Moreover, Indian authorities did not request formal extradition proceedings until January 10, 2019. The United States has not been able to explain these very long delays or failure to detain Defendant during his multiple trips to India, demonstrating a failure to actively prosecute the case and lack of any diplomatic necessity. This significant delay in prosecution is a special circumstance justifying the grant of bail.

### IV. CONCLUSION

For the reasons stated above, the Court finds that there is no risk of flight or danger to the community, and that there is a special circumstance based on the length of delay in India's prosecution of the case. Accordingly, the Court DENIES the United States' request for detention, subject to the imposition of conditions, and sets the case for a bail hearing on December 9, 2022, at 10:30 a.m. The Court intends to require, among other things, that Defendant surrender all passports and other travel documents, that all of Defendant's properties be posted as security for a bond to be set at $3.5 million, and that Defendant's wife and daughters serve as co-signers on the bond for Defendant's release. The Court also intends to appoint Defendant's wife as custodian of Defendant while he is released on bail. Prior to the bail hearing, all co-signers need to be interviewed by Pretrial Services. **After** all real property has been posted as security for the bond, Defendant will be released subject to GPS monitoring and home confinement with the ability to leave for medical and attorney visits, court appearances, and as directed by Pretrial Services.

IT IS SO ORDERED.

Dated: December 2, 2022

KANDIS A. WESTMORE
United States Magistrate Judge

7